## GRAHAM v. JONES.

1. Where a testator gave to his executors power to sell a tract of land and eight negroes for the purpose (as implied from the terms of another clause in the will) of paying his debts, but made no disposition of this property, one of his executors could not acquire title to such tract of land by paying the debts with her own funds; she could only demand reimbursement for her expenditures, after accounting for her receipts.
2. This executrix having mortgaged this land for her own purposes, the mortgagee took only an equitable assignment of the mortgagor's interest after such accounting had.
3. And this mortgage having been given to secure a note upon which there was a surety, and afterwards there was another mortgage of other property given by this mortgagor to the same person to secure this note and a subsequent note of the mortgagor, and the latter property was first sold, the proceeds of sale should be applied *pro rata* to both notes.

Before PRESSLEY, J., Union, October, 1884.

The complaint and answers, as they appear in the "Brief," were as follows:

1. The complaint first sets out a note, of which the following is a copy:

"On or before twenty-fifth of December, eighteen hundred and eighty-two (1882), we, or either of us, promise to pay W. T. Graham, or bearer, the sum of nine hundred and eleven 95–100 dollars, cash loaned.   Witness our hands and seals.

"S. JONES, [L. S.]
"February 23, 1882.            JOSEPH HILL, [L. S.]"

2. The complaint next sets out another note, of which the following is a copy:

"$494.55.   One day after date, we, or either of us, promise to pay Wm. T. Graham the sum of four hundred and ninety-four 55–100 dollars.   Value received.   Interest at the rate of ten per centum per annum.

"January 19, 1884.            S. JONES, [SEAL.]"

3. The complaint sets out, also, an account against Sarah Jones for $37.57.

4. On the $494.55 note, Graham claims only $294.55 and interest.

5. That no part of said debts have been paid, except $595, on the 11th day of April, 1884.

6. The $911.75 note was secured by a mortgage on a tract of land containing 102 acres, known as the "mill tract," said mortgage having been executed by said Jones on the 15th March, 1882.

7. That the defendant, Mary A. E. Gist, claims an interest in said land.

8. That at the time the mortgage above referred to was executed, plaintiff was informed by the defendant, Sarah Jones, and also by her co-defendant, Joseph Hill, the brother of the defendant, Sarah Jones, who signed the note first above set forth, jointly and severally with the defendant, Sarah Jones, that defendant, Sarah Jones, had a title in severalty and in fee to the whole of above described tract of land; that the said defendants repeated this to the plaintiff until he believed it to be true.

9. That under that belief, and by virtue of a power to the plaintiff contained in the mortgage above described, plaintiff, on the 7th day of April, 1884, offered said land for sale at Union Court House, after due notice of time and place of sale; and at the sale thereof, still believing from the statements of the said defendants that the defendant, Sarah Jones, owned the whole of said tract in severalty and in fee, and without notice, either express or implied, from any source whatever, that her title to the same was imperfect, plaintiff bid off said land at and for the sum of seven hundred and five dollars, which plaintiff alleges is a full and fair price for the whole of said land in entirety and in fee.

10. That since said sale, plaintiff has discovered that he was deceived in believing that the defendant, Sarah Jones, had the entire title to said land; he is now informed that the defendant, Mary A. E. Gist, is a joint tenant or tenant in common with the defendant, Sarah Jones, and owns an undivided half interest in the same, and claims and asserts title thereto under and by virtue of the last will and testament of one Jesse Jones; a copy of which is annexed to this complaint as exhibit A.

11. Sarah Jones and Joseph Hill, although they deceived the plaintiff as to Sarah Jones's title to said land, and he was thereby led to foreclose it at a price far beyond its real value, insist that said purchase is valid, and that the plaintiff should comply with

his bid, and credit the note secured by said mortgage with the amount thereof, which plaintiff has refused to do.

The plaintiff prays that said sale be set aside; that said mortgage be foreclosed, and the interest of Sarah Jones in said land be sold under order of court and the proceeds applied to the payment of the costs and expenses of this action, and the amount due on said notes, account, and mortgage and interest thereon; that the defendants be adjudged to pay any deficiency, and for further proper relief.

## EXHIBIT A.

In the name of God. Amen.

I, Jesse Jones, of Union District, South Carolina, being of sound mind and but feeble in health, and mindful of the uncertainty of my life, do make and ordain this to be my last will and testament, to wit:

First. I want all my just debts paid.

Item. I give and bequeath unto my beloved wife, Sarah Jones, my home tract of land, containing five hundred and sixty-five acres, during her natural life; at her death, my will is that it shall be my daughters', Mary A. E. Jones and Laura L. Jones, and the heirs of their bodies.

Item. I give and bequeath to my beloved wife, Sarah Jones, the following negroes: Peter, Fannie, Elija, Squire, Clarkey, Cornelia, Isaac, Thomas, Peter, Richard, Patience, Lizzie, Wesley.

I give and bequeath to my beloved wife the following negroes: Harriet and child, to and her heirs forever.

Item. I give and bequeath to my daughter Mary the negro girl Hannah, and to the heirs of her body.

Item. I bequeath to my daughter, Laura L. Jones, the negro girl Caroline, and the heirs of her body.

Item. My desire is, that the balance of negroes be sold—Henry, Steven, Louisa, Elija, John, Moses, Peggy, Antony—and also my remainder of land.

Item. My desire is, that all my stock be kept on the place, unless my executor may think proper to sell a portion of them, to do so.

Item. My desire is, that my daughters shall be educated from the crops on the place.

Item. After the death of my wife, my desire is that my negroes shall be equally divided between them—Mary and Laura.

Item. From item second, the property willed in that item is to go to my daughters, Mary A. E. Jones and Laura L. Jones, to them and the heirs of their bodies (after the death of my wife, Sarah Jones).

Item. If the property willed to be sold is not sufficient to pay the just debts, I will that Lyge and Wesley, if both be required, be sold for that purpose.

Item. I do appoint my beloved wife, Sarah Jones, Jos. Hill, Holly Hill, and Perry Fant my executrix and executors.

Item. I will that the increase of negroes go to daughters Mary and Laura.        JESSE JONES.

I have set my hand in the presence of

       D. S. LEE,

       T. P. JONES,

       SAMUEL F. FANT.

September 30, 1856.

The answer of Dr. Hill alleges that under the will of Jesse Jones, the mill tract was ordered to be sold to pay debts, and that his co-defendant, Mrs. Jones, having paid the debts of her testator without a sale of the mill tract, he supposed the same became hers in severalty; that if he had not so believed, he would not have become surety upon the note. That so believing, he did, at the time of mortgage given, represent to the plaintiff that Mrs. Jones was the owner of the mill tract, and that she had derived her title from the will of her husband.

2. That the note set forth in the paragraph 1st of the complaint is entitled to a credit of four hundred and        dollars from proceeds of sale of home tract mortgaged by the defendant, Mrs. Jones, to the plaintiff, and by said plaintiff sold on April 7, 1884.

3. That the defendant is released, because time was given.

4. Denies that $705 is a full and fair price for the whole of

the mill tract, and insists that the sale, so far as this defendant is concerned, should be held good and valid.

5. Denies all allegations of the complaint inconsistent with the truth of these defences.

The defendant, Mrs. Jones, in her answer, alleges:

1. That Jesse Jones, her husband, died in the year 1856, seized and possessed of the two parcels of land mentioned in his will. That she paid and discharged all his debts, and thereupon and thereafter believed that she became entitled to the mill tract in severalty and in fee.

2. That she did state to the plaintiff that the mill tract belonged to her, and she also stated to him, before the execution of the mortgage of said mill tract, the source of her title thereto, and, independently of any statement of herself or her co-defendants, the plaintiff well knew whence and in what manner her title was derived. That before the execution of the mortgage upon the homestead, she stated to the plaintiff that she only had a life estate therein, and she then supposed that to be her only interest therein.

The defendant, Mary A. E. Gist, by her attorneys, Munro & Munro, answering the complaint herein, alleges:

That her father, Jesse Jones, at the time of his death in 1856, was seized and possessed of the lands described in the mortgage deed set forth in the complaint, and upon his death said land descended to his heirs at law, to wit, his widow, the defendant Sarah, and his two daughters, Laura and this defendant.

That after the death of her said father, and before the commencement of this action, and about twenty-five years since, the said Laura died intestate, leaving as her heirs at law the defendant Sarah and this defendant.

That upon the death of said Jesse Jones, this defendant became seized of an undivided one-third part of said land, and ever since the death of said Laura, this defendant has been seized of an undivided moiety thereof.

That for more than eighteen years last past, the defendant Sarah has been in the exclusive receipt of the rents and profits

of said land; has never accounted to this defendant for the same, and is largely indebted to this defendant therefor.

Further answering, this defendant denies that she is, or should be, held liable to the plaintiff for any deficiency or any moneys whatever, as prayed in the complaint.

Further answering, this defendant has not sufficient knowledge or information to form a belief respecting the allegations of the complaint not herein specifically admitted, and, therefore, requires strict proof thereof.

Wherefore this defendant demands judgment that an account be taken of the rents and profits of said land, and that this defendant have judgment therefor, and for costs.

The mortgages are in the usual form, with power of sale. Upon default of payment of the first note, the mortgagee is empowered to sell the mill tract and apply the proceeds of sale to that note; and on default in the payment of the two notes secured by the second mortgage, the mortgagee is empowered to sell the home place and apply the proceeds to the payment of these two notes. On April 7, 1884, after due advertisement under said mortgages, the plaintiff sold both places—the home place for $595 to Mrs. Mary A. E. Gist, who received a deed therefor; and the mill tract to the plaintiff for $705, who took no deed.

The testimony was taken in open court before Judge Pressley, who afterwards filed the following decree, omitting some matters elsewhere stated:

Plaintiff also seeks judgment against Sarah Jones for $37.57 due to him on open account, to which she makes no objections, but claims a large amount for damages by plaintiff in selling her land at an unreasonable time, after agreeing in the second mortgage for time to be given to her on said debts. It was than supposed that Mrs. Gist would sign the said mortgage with her mother. She refused to do that, and as it was then thought that she had an estate in remainder, in all the "home place" after the life estate of her mother, and as plaintiff regarded the life estate not sufficient security, his selling the same under the mortgage was no breach of his contract.

Joseph Hill claims that he is discharged as surety on the first

note, because he alleges that plaintiff gave time to principal debtor without the assent of the surety. The testimony on that point shows that he was not present when the second mortgage was executed, but it also shows that he had been previously consulted in the matter, and gave his active aid to procure to it the signature of Mrs. Gist. His claim of discharge is, therefore, not sustained by the testimony.

The remaining question is, whether Sarah Jones was sole owner of the mill place. It belonged to her husband, Jesse Jones, who, on the 30th September, 1856, three days before his death, by will directed that it be sold for payment of his debts. He also set aside eight slaves to be sold for that purpose, and directed that if said slaves and lands were not sufficient to pay his debts, then two other slaves, bequeathed to his wife, should be sold to pay them. Sarah Jones, his widow, and Joseph Hill, her brother, qualified on said will as executrix and executor. They sold one of the slaves for $1,000, and the widow, without further sale, paid the rest of said debts. The amount of them is not satisfactorily proved. Her returns to the ordinary show more than $3,300, but her daughter Laura died in or about the year 1859, and the widow made no returns after that. Jesse Jones was administrator of his father's estate, and had an interest in it, but was indebted to it so that there was a considerable balance against him paid by his widow and not included in the said $3,300. She testifies that because she paid the debts which the "mill place" was to be sold to pay, she always considered that it thereby became her property, and as such she has ever since claimed and held it.

Defendant, Mrs. Gist, claims that a portion of said debts were paid by the crops on hand when her father died, and by the stock on the home place and the annual proceeds of the "mill place." But it is not satisfactorily proved that said proceeds of the mill place were ever sufficient to pay the taxes and repairs, and to keep down the interest on the debts paid for the estate. As to the crops on hand, they are expressly appropriated by the will to the education of testator's daughters, and the stock is directed to be kept on the place in the discretion of the executrix and the executor, and there is no proof that any of it was sold. Mary Gist was married in 1866, and is now 36 or 37 years old. She

testifies that she did not know until lately why her mother held the mill place; that she lately knew the whole of it was mortgaged to plaintiff, and made no objection, either before or at the sale under foreclosure. Her husband testifies that he knew long ago, does not remember how long, that Mrs. Jones claimed the mill place as her own, and so held it.

At the time Mrs. Jones mortgaged the "home place," she had not only a life estate therein, but also a share in remainder, by reason of the previous death of her daughter Laura. Plaintiff was ignorant of that fact, not only when he sold the home place under the mortgage, but also up to and after the time of filing his complaint in this case. The true interest of Mrs. Jones in the home place was of sufficient value to pay both debts due to plaintiff with interest, but there are no proper allegations in the complaint to authorize me to make any decree concerning that sale.

Though I cannot fix the amount of the debts of Jesse Jones paid by Mrs. Jones, yet I have no hesitation in finding, and do find, that after applying the $1,000, proceeds of the sale of the slaves, there remains a balance due to her for debts of Jesse Jones, paid by her out of proceeds of her crops, exceeding considerably the sum of $2,300, and that the mill place could not then, or since, have been sold for that sum. Jesse Jones gave only $1,700 for it a year or two before his death, and his will, made three days before his death, plainly indicates his doubt whether the mill place and the eight slaves would suffice to pay his debts.

I therefore adjudge and decree, that Mrs. Jones had a lien on the mill place for the money advanced by her to more than its value, and that her holding the same for so long a time has perfected her title. And further, that her right is vested in plaintiff to the extent of his note, with interest.

I further adjudge, that plaintiff have judgment and execution against Sarah Jones for the sum of $37.57.

The question of usurious interest need not be decided, because it is raised only by Mrs. Gist, and she has no interest in the property mortgaged to secure plaintiff's debt.

The question of the final liability of Joseph Hill, for any balance which may remain unpaid on the notes to which he is surety, after exhausting the property mortgaged, must remain undecided

until the end of the litigation, if any, concerning the sale of the home place. If there should be no such litigation, then the $595 for which it sold must be applied *pro rata* to the second note and the balance which may remain unpaid on the first note after applying to it the proceeds of the mill place.

It is ordered and adjudged, that James Munro, clerk of the court, after due advertisement, do sell the mill place at public auction at Union Court House, on salesday in next February, for one-half cash, remainder payable in one year with interest from day of sale, secured by bond of the purchaser with mortgage of the land, the purchaser to have the right to pay all cash. The proceeds of said sale are to be applied to the payment of the costs of this case, the remainder to be paid to the plaintiff, not exceeding the sum of $911.95, with interest from the 25th of December, 1882.

The plaintiff has leave, as he may be advised, to amend his complaint by adding such allegations as deemed necessary for the proper sale of the home place, and the defendants, Sarah Jones and Joseph Hill, or either of them, has leave to offer testimony as to the rents of the mill place for the year 1884, and to have the amount applied to the mortgage debt.

The exceptions to this decree are fully stated in the opinion of this court.

*Mr. D. A. Townsend*, for plaintiff.

*Mr. William Munro*, for Joseph Hill.

*Messrs. David Johnson, jr.*, and *R. W. Shand*, for Mrs. Gist.

February 24, 1886. The opinion of the court was delivered by MR. CHIEF JUSTICE SIMPSON. It will be necessary, for a proper understanding of this case, that the complaint and answers should be set out in full, and also the decree of the Circuit Judge, his honor, Judge Pressley. These papers, therefore, will be appended to this opinion, so that they may be incorporated by the reporter as a heading hereto. A short synopsis of the case, however, will be given here.

The plaintiff held two mortgages of the defendant, Sarah Jones. One covered a tract of land known as the "mill place," and was given to secure the payment of a sealed note for $911.15, to which the defendant, Jos. Hill, was surety; the other to secure this first note and another for $494.55 (reduced by a credit to $294.55), bearing 10 per cent. interest. This covered a tract of land known as the "home place." This note was dated in January, 1884, the first in February, 1882. At the time of the mortgage of the mill place, it was represented to the plaintiff that Mrs. Jones was the sole owner thereof, and the plaintiff accepted the mortgage with that understanding. The mortgages contained a power of sale, and under this power the said lands were sold by the plaintiff, the defendant, Mrs. Gist, purchasing the home place at $595, and the plaintiff the mill place at $705.

After this sale, the plaintiff became satisfied that he had been misled as to the ownership of the mill place by Mrs. Jones, the mortgagor, and the action below was instituted for relief from his purchase, seeking to set aside the sale of the mill place to himself on account of misrepresentations by Mrs. Jones, and also a decree ordering a resale of said place, the proceeds to be applied to the notes, and a judgment for any deficiency against the defendants—Mrs. Jones and the surety, Jos. Hill, we suppose. The defendants answered separately. Hill claimed that he had been released from his suretyship, because time had been given his principal, and insisted that the sale of the mill tract should be declared good and valid, and that the plaintiff should be held to his purchase, admitting that he had represented to the plaintiff that Mrs. Jones had title to said place, which he believed to be true. Mrs. Jones admitted that she had made the representations mentioned as to the mill place, believing at the time that she had titles thereto, because she had paid certain debts of her deceased husband, by whose will this place was directed to be sold to pay his debts. Mrs. Gist claimed that she was the owner of one undivided half of the land embraced in the mortgage, as heir at law of her deceased father, Jesse Jones, and as heir at law of a deceased sister, Laura, who had died since the death of her father, and she prayed an accounting from her mother Sarah for

the rents and profits while she had been in possession, some eighteen years.

Judge Pressley, who heard the case, held, first, that Hill could not be released from his suretyship, as the testimony negatived his ground for discharge. He held, second, that Mrs. Jones had paid debts of her husband more than the value of the land, sufficient to give her a lien on the mill place for reimbursement, said place having been directed in the will of her husband, Jesse Jones, to be sold to pay his debts, of which will she and her brother, the said Jos. Hill, were executors; and that her long possession, with this lien, had perfected her title, which had vested in the plaintiff to the extent of his note and interest. He further adjudged "that Mrs. Gist had no interest in the property mortgaged to pay plaintiff's debt," and, further, he decreed "that the question of the final liability of Joseph Hill, for any balance which may remain unpaid on the notes to which he is surety, after exhausting the mortgaged property, must remain undecided until the end of the litigation, if any, concerning the sale of the home place. If there should be no such litigation, then the $595, for which it sold, must be applied *pro rata* to the second note, and the balance which may remain unpaid on the first note, after applying to it the proceeds of the mill place"; finally ordering James Munro, clerk of the court, to sell the mill place on certain terms, the proceeds when collected to be applied to the costs of this case, the remainder to be paid to the plaintiff, not exceeding the sum of $911.95, with interest from December 25, 1882, giving leave to the plaintiff to amend his complaint, by adding other allegations, as deemed necessary, for the proper sale of the home place, and also leave to the defendants, Sarah Jones and Joseph Hill, to offer testimony as to the rent of the mill place for the year 1884, and to have the amount applied to the mortgage debt.

From this decree, or at least from portions of it, each of the defendants, except Mrs. Jones, appealed upon separate exceptions. *Mrs. Gist,* because his honor held that the defendant, Mrs. Jones, had a lien on the mill place for the money advanced to more than its value, and that her holding had perfected her title; and, further, that her right had vested in the plaintiff to the extent of

his note; and, further, because he held that she, Mrs. Gist, had no interest in the property mortgaged. *Joseph Hill*, because his honor held that the proceeds of the home place should be applied ratably to the two notes after applying the proceeds of the mill place to the note secured thereby, and also because he held that the plaintiff should be relieved from the purchase of the mill place when the complaint should have been dismissed. And *the plaintiff* appealed, because his honor should have decreed that the proceeds of the sale of the home place should have been applied first to the payment of the second note and not applied *pro rata* to both notes.

The other portions of the decree stood unappealed, to wit: the refusal to discharge Joseph Hill from the note on which he was surety, his final liability thereon for any balance, and the sale of the mill place ordered, which, in effect, set aside the previous sale made by the defendant under the mortgage, except that Joseph Hill urged that the plaintiff should be held to his purchase.

We will take up Mrs. Gist's exceptions first. She claims that his honor erred in holding that Mrs. Jones had a lien on the mill place for moneys advanced for the estate, and that her long holding of the mill place had vested in her title therein, which had vested in the plaintiff to the extent of his note and interest, and also in holding that she, Mrs. Gist, had no interest in this property.

Upon an examination of the will of the testator, Jesse Jones, it will be found that he made no disposition of the proceeds of this tract of land nor of the eight negroes embraced in the same clause of the will with this land except impliedly, the implication arising from a subsequent clause in which he stated, "if the property willed to be sold is not sufficient to pay my just debts, I will that Lyge and Wesley, if both be required, be sold for that purpose." There is no residuary clause in the will. Nor does he dispose of his personal assets, if any, except the negroes. He first directed that all of his just debts be paid, and after giving his home place to his wife for life, then to his two daughters, and also disposing of certain of his negroes, he directed eight negroes and the remainder of his land (mill place), to be sold as above, with the two negroes, Lyge and Wesley, as above. He therefore

died intestate as to the eight negroes and the mill place, except that they should be sold, and impliedly that the proceeds thereof should be applied to his debts—nothing said as to the excess, if any.

The defendants, Sarah Jones and her brother, Joseph Hill, qualified as executor and executrix, and thereby they became invested with the power to sell the property mentioned. In the meantime the title to the mill place descended to the heirs at law, to wit, the widow and the two daughters; and one of the daughters having since died (Laura), leaving her mother, Sarah, and her sister, Mary, her heirs at law, her share descended to them, in whom the title has been ever since in equal moieties unless the title of Mrs. Gist has been divested and obtained by Mrs. Jones by her long possession. As to this we find no such ouster in the case as would entitle Mrs. Jones to claim the land by possession. She took and held possession under the will of her husband for a certain purpose, and there does not seem to have been any act of hers "until the execution of the mortgage" showing any claim against the will.

Now, the question arises, had she, by virtue of paying the debts of the estate from her own means, such a lien on the mill place, as held by the Circuit Judge, which she could transfer to the plaintiff to secure a private debt of her own? No doubt Mrs. Jones, upon final settlement of the estate of her husband, would be entitled to reimbursement for all sums she may have paid from her own funds, and no doubt she could transfer this right to another, but before obtaining such reimbursement she would be required to account for all of the assets of the estate which she had held as executrix. In other words, before she could claim reimbursement she should show that she had made payments over and above the assets for which she was legitimately accountable. But we know of no authority by which she could in advance of settlement lay claim to any specific property of the deceased and deal with it as her own; for instance, mortgaging it for her private debts, as was done here of the mill place. The executors under the will had power to sell the mill place, the proceeds to be accounted for to the estate and the distributees thereof. This was the extent of their power and their duty.

Have they made such sale? Not so, unless the mortgage to the plaintiff can be regarded as a sale, and therefore an execution of the power. The mortgage was not a sale; certainly not such as the will directed. It was not in execution of the power with which the will invested the executors. It was therefore void as a legal paper, and the sale by the plaintiff under it was equally void. The land then stands as if no such sale had been made with the title thereto in Mrs. Jones and the defendant, Mrs. Gist, and it has been subject to be sold under the will by the executors during all the time since the death of the testator. It has not been sold, and now the decree of his honor below has ordered a sale. From this portion of the decree there is no appeal, either from Mrs. Jones or Mrs. Gist, and we are not warranted therefore in disturbing it. Besides, doubtless, if there was an appeal this is the best course to be taken under all the circumstances.

But then comes the application of the proceeds which presents a difficult question. The decree directs that these shall be applied after the costs to the payment of the plaintiff's note for $911.95. This was directed on the theory of the lien of the plaintiff through the mortgage. According to our view above the plaintiff has no lien, therefore he is not entitled in the first instance to the proceeds of the sale. On the contrary, we think that these proceeds must be the subject of administration by the executors or under the direction of the court, as the other assets of the estate may be, Mrs. Gist being entitled as one of the distributees of her father's estate to one-half of such portion of said proceeds as may remain after payment of the debts of the estate, Mrs. Jones first accounting for the other personal assets previously disposed of (in so far as she may be accountable), before subjecting these proceeds to her reimbursement, and the plaintiff being entitled to set up his mortgage against the share of Mrs. Jones therein, should there be any remaining after Mrs. Gist has been paid not only her half of these proceeds but also such other portion as she may be entitled to from the balance of the personal estate, if any, after paying of debts and reimbursing Mrs. Jones for such amounts as she may have paid on the debts from her own funds. This is a complicated matter and it is not free from difficulties in any view which may be taken, but we think the

course indicated above is the best that can be done in view of both the legal and equitable rights of the parties.

The Circuit Judge made no decree as to the sale of the home place. In fact, that matter was not embraced in the complaint, and no prayer therein in reference to said sale. He did, however, decree that, in the event there was no subsequent litigation about the home place, that the proceeds thereof should be applied *pro rata* upon both notes after applying to the first note for $911.95, the proceeds of the mill place. There was no error in this, supposing that there were proceeds of the mill place now to be applied; but there being none as yet, the proceeds of the home place should be applied *pro rata* to both notes secured by it, in case there is no further litigation as to the home place. The Circuit Judge also left the final liability of Joseph Hill, as surety, open; as also whether the defendants should pay such deficiency of the notes as might remain after the application of the proceeds of the sales. As we have said, there has been no appeal from these matters. They are, therefore, not before us. The exceptions of the defendant, Joseph Hill, and of the plaintiff, Graham, are disposed of above.

It is the judgment of this court, that the judgment of the Circuit Court be modified as herein, and that the case be remanded for further proceedings as the parties may be advised.